Curia, per Johnston, Ch.
Perhaps the plainest View may be obtained of the principal questions involved in this appeal, by taking our position at once amidst the circumstances existing at the death of Mr. Stoney. He died in possession of a large estate, consisting partly of property which he had conveyed away by the deed of the 16th of June, 1837, and partly of other property, of which the title still remained in himself; and he was largely!, indebted, the principal debt consisting of a bond, in the penalty of 400,000 dollars, the rest being simple contracts.
The whole of the property has been sold; the proceeds of it are in this court ; the different creditors and claimants have been called in, at the instance of the plaintiff, who is a general and simple contract creditor of the deceased; and the question is, how shall the fund be distributed among them ?
The simple contract creditors insist upon a pro rata distribution ; those interested in the bond and deed contend for a preference.
If the deed be regarded as an ordinary conveyance, and the bond as an ordinary obligation, and if there were no connexion between them, the principles of the decision would be very clear. The property covered by the deed would constitute no part of Mr. Stoney’s estate, but would belong to the grantees ; and its proceeds must be awarded to him. The estate of Mr. Stoney would be restricted to the property of which the title remained in him. Out of this his debts must be satisfied, in the order prescribed by the statute ; and, of course, the bond would be preferred over the simple contracts.
But this is not exactly the character or position of these instruments. The bond purports to have been taken by Hamilton and Magrath, the obligees, as trustees of certain simple contract creditors of Mr. Stoney, whose names and demands are exhibited in a schedule annexed to and referred to in it; and its penalty is suspended, upon a condition, that he should pay them, with certain abatements, within a specified time, which he has failed to do. The deed purports to have been executed to the same trustees, as a security to the bond, and to advance the interests of the cestuis que trust, the creditors mentioned in the bond schedule. The first and natural impression from these *252 circumstances would be, that the proceeds of the property covered by the conveyance should be passed through the grantees to their cestuis que trust, and that after being credited upon their demands, and upon the bond by which they are secured, the residue of the bond should stand, as a specialty demand, against the general assets of the obligor. And to this same conclusion I have come, after an attentive consideration of all that has been advanced by counsel, in an argument of unusual extent, and uncommon ingenuity, discrimination, and learning.
The question is as to the validity and operation of the instruments referred to, and what effect is to be allowed them in the distribution of the funds in the possession of the court; and the objections to their operating in the manner contended for by the creditors interested in them, are rested on the rights of Mr. Stoney, and the other creditors, which are supposed to be thereby infringed.
I suppose it is hardly necessary to observe, that whatever would conclude Mr. Stoney himself, must be equally conclusive on his personal representatives and distributees ; and that although they, and not he, are the parties before the court, urging the objections, the case must be considered as if he were the actual party in their place. Nor need I say, that as to the validity of the instruments, the objecting creditors must be concluded with Mr. Stoney, except in the single instance where their execution might operate as a fraud upon them; and that, as to the influence of these papers, in the distribution of the fund, their right of objection must be restricted to such equities as the rules of this court recognize in the administration of funds in like cases.
I proceed, now, to consider the objections urged by counsel.
They may be summed up thus :
That, irrespective of the terms exacted by the instruments from the creditors intended to be secured, no consideration proceeded to Mr. Stoney, either from the trustees or creditors ; wherefore the papers are to be regarded as purely voluntary: and, as such, neither of legal obligation, nor enforcible in equity.
That the creditors did not bind themselves to the terms, either by becoming parties or by assenting, so as to impart a consideration, and entitle themselves to enforce the instruments.
That the latter are ineffectual in law, not only as being voluntary, but incomplete.
*253 And that the rules of this court forbid it to give them any effect calculated to disturb that equality among creditors which is so much favored here.
There is no such condition expressed on the face of these papers, as that they shall not begin to operate until the creditors, respectively, shall become parties, or assent; much less is a condition or intention expressed, (as seems to have been done in Atherton vs. Worth, 1 Dick. 375, one of the cases quoted,) that they shall not take effect unless all the creditors shall do so. Therefore, I shall consider them as proceeding from Mr. Stoney, with his free consent, that they shall operate, — but that they shall operate only upon the terms expressed in them; and that they are good for those intended to be benefitted by them, so far as the law allows them to avail themselves of their benefits ; with this single proviso, that if they claim the benefits they must abide by the terms.
And, in the first place, I am of opinion that it was not necessary that the creditors intended to be secured, should be parties or assenting at the execution of the instruments. As observed by Chief Justice Marshall, in Brooks vs. Marbury, (11 Wheat. R. 97,) “ deeds of trust are often made for the benefit of persons who are absent, and even for persons who are not in being and the interests of all such would be defeated, if their concurrence were deemed a pre-requisite to the operation of the deeds. Accordingly, he follows what I have quoted by the position, that “ whether the deeds are for the payment of money, or for any other purpose, no expression of the assent of the persons for whose benefit they are made, has ever been required as preliminary to the vesting of the legal estate in the trustee.” In the same case, it was held that a subsequent assent in terms, or by substantial acts, was a sufficient acceptance.
In this branch of the discussion, I am assuming, of course, that the instruments are voluntary, as proceeding from and executed in fulfilment of no contract between the cestuis que trust and Mr. Stoney. It is impossible to put a deed, made with the motive of securing creditors, upon precisely the same footing with one creating a trust for pure volunteers. But taking them as such, the case of Ellison vs. Ellison, (6 Ves. 656,) sustains the position, that wherever the instrument effectually constitutes a trust, even for volunteers, they may enforce it. . Lord Eldon observes, (lb. 662,) “ I had no doubt, that from the moment of executing the first deed, supposing it not to have been for a wife *254 and children, but for pure volunteers, those volunteers might have filed a bill in equity, on the ground of their interests in the instrument, making the trustees and the author of the deed parties. I take the distinction to be, that if you want the assistance of the court, to constitute you cestui que trust, and the instrument is voluntary, you shall not have that assistance for the purpose of constituting you cestui que trust."
The same doctrine was held by the same great Chancellor, in Pulvertoft vs. Pulvertoft, (18 Ves. 84.) He says “the distinction is settled, that in the case of a contract merely voluntary, (I do not speak of valuable or meritorious consideration,) this court will do nothing, But, if it does not rest in voluntary agreement, but an actual trust is created, the court does take jurisdiction.”
The case of Walwyn vs. Coutts, (5 Cond. Eng. Ch. 7,) has been referred to for a contrary doctrine. The grounds upon which the order was made in that case are not disclosed by the note of it which has been reported.
The difficulty, in subsequent cases, has been to discover upon what principle, consistent with his own decisions in Ellison vs. Ellison and Pulvertoft vs. Pulvertoft, — the authority of which has been constantly acknowledged — Lord Eldon could have rested his judgment. Sir Launcelot Shadwell, in commenting upon it in Garrard vs. Lauderdale, (3 Sim. 1, 5 Cond. Eng. Ch. 1,) supposes that the principle of the case is, that where a debtor, for his own convenience, makes a disposition between himself and a third person, constituting him trustee as between themselves for the payment of his debts, and this without concert with or notice to his creditors, he may countermand it. Lord Brougham, before whom the last mentioned case afterwards came, (2 Rus. and Mylne, 451, 13 Cond. Eng. Ch. 121,) says of the instrument in Walwyn vs. Coutts, that it was not so much a conveyance, vesting a trust in A, for the benefit of the creditors of the grantor, but rather an arrangement made by a debtor for his own personal convenience and accommodation, (for the payment of his own debts, in an order prescribed by himself,) over which he retains power and control.
Upon these views the authority of Walwyn vs. Coutts was sustained in Garrard vs. Lauderdale ; and upon the same principle the latter case was also itself decided. It will be seen at once, that the application of the principle depends upon the construction of the instrument, and the intention with which it was *255 executed. If it appear that the trustee was not intended to be the trustee of the creditors, but of the grantor, his mere agent, and that the conveyance was executed simply with a view to enable him to perform the acts directed, these cases say the deed is revocable ; though it is not clear that it could be revoked after the transaction has come to the knowledge of the creditors, and against their wish, expressed before the revocation.
This is the interpretation put upon these cases, by Sir C. Pepys, in Bill vs. Cureton, (8 Cond. Eng. Ch. 103,) who remarks that “ the distinction between them and the prior cases, is somewhat refined ;” “ but it is obvious that the distinction has good sense for its foundation, and that the rule, as established by them, is adopted to promote the views and intentions of the parties.”
I have thus brought together the two decisions of Lord Eldon, in which the rule is firmly laid down on the one hand, and the cases, one of them decided by himself, which have been supposed to oppose it on the other, and I have shewn that the rule was not intended to be shaken by these cases.
I have purposely abstained from a reference to other cases in support of the rule; reserving, for that purpose, an extract from the judgment of the master of the rolls, in Bill vs. Cureton, already mentioned, which will not only shew the strength of its authority, but the fact that it was never intended to be drawn in question. “That a voluntary settlement,” says he, “where the trust is actually created, is binding upon the settlor, has been so long, and is so fully established, that no attempt to raise the question would probably have been now made, were it not that the modern cases of Walwyn vs. Coutts, and Garrard vs. Lau-derdale, have been supposed to be inconsistent with that doctrine.
“ The doctrine itself has never been disputed, and has been the subject of repeated decisions, from the cases of Villers vs. Beaumont, (1 Vern. 100,) in the year 1682, and of Brookbank vs. Brookbank, (1 Eq. C. Ab. 168,) in 1691, down to the modern cases of Ellison vs. Ellison and Pulvertoft vs. Pulvertoft. It must, indeed, have been coeval with the statute of the 27 Eliz. inasmuch as the second section of that Act declares that voluntary conveyances shall be void only as against purchasers for valuable consideration ; assuming, therefore, that as against the authors of such settlements, they were good. If, therefore, the cases of Walwyn vs. Coutts and Garrard vs. Lauderdale, were *256 inconsistent with this doctrine, there would be no doubt on which side the weight of authority would be found. But, in fact, those decisions were not intended to interfere with the general doctrine, and the grounds upon which they were founded are perfectly consistent with all the preceding cases. It cannot be supposed that Lord Eldon, who decided Ellison vs. Ellison and Pulver-toft vs. Pulvertoft, and several similar cases, intended to overturn the doctrine upon which they proceeded, in his decision in Walwyn vs. Coutts; and the Tice Chancellor, in Garrard vs. Lauderdale, expressly draws the distinction, and leaves that doctrine untouched. These two cases, indeed, so far from deciding that a cestui que trust becoming ■ entitled under a voluntary settlement, had not a good title against the settlor, proceeded upon this — that the character of trustee and cestui que trust never existed between the creditor and the trustee of the trust deeds; but that the settlor himself was the only cestui que trust, and that, therefore, he was entitled to direct the application of his own trust fund. Whether such views of the relative situation of the creditor and the trustee were correct, or not, is immaterial for the present purpose. The grounds upon which the judges who decided those cases professed to proceed, are sufficient to prevent their decisions from being considered as authorities against the former well established doctrine.”
I might refer to innumerable other authorities, English and American, in support of the rule, but I have already dwelt too long upon this point.
It is not necessary to contend that such instruments are not revocable. I suppose they would be, if, after notice to the ces-tuis que trust, they disputed, or refused to accept and be bound by any terms imposed on them. But, in point of fact, those executed in this instance were never revoked ; nor does it appear that Mr. Stoney ever repented his act, or made a different disposition. On the contrary, he constantly recognized their validity, and the interests of his creditors under them, by settlements and payments of interest, in which he was imitated by his executors after his death.
But suppose Walwyn vs. Coutts were authority for the position, that voluntary trusts for the payment of debts, to which the creditors are not parties, nor assenting, are not only revocable, but null.» That can only be so, as that case has been explained, where the creditors were not intended to be parties, or assenting. But the instruments here, on their face, shew an *257 entirely different intention; and, to take notice of nothing else, the very fact that terms are proposed to the creditors on the face of these instruments, goes far to shew that the securities were intended for their acceptance.
I have no doubt, therefore, that this case can, by no possibility, fall within the principle of the cases relied on. The creditors had an interest here, as soon as the papers - were executed by Mr. Stoney and the trustees ; such an interest, according to numberless cases, as entitles them to accept now, if they have not done so before; never having dissented, and the instruments (in which no time is set for their accepting,) never having been in fact revoked — and the fund still remaining for distribution. See 14 Peters’s R. 20, 32; 4 J. C. R. 529 ; 10 Com. L. R. 64; 1 Tern. 260-1.
Heretofore, I have examined the transaction as if the creditors were not actual parties, or assenting; as if it were questionable, in some degree, whether the instruments were executed upon consultation with them. But on their face there is enough to conclude Mr. Stoney on all these points. The bond recites that “the parties to whom the above bound John Stoney is so indebted, have agreed,” “that the said John Magrath and James Hamilton be appointed trustees, for and in behalf of the said creditors, to take of and from the said John Stoney good and sufficient security for the payment of the said debts,” and then follows the stipulation, secured by a penalty, for their payment. Then ensues the deed, in which, after reciting the terms upon which the creditors are to be paid, and the bond taken by the trustees to secure their payment, the real estate and slaves are conveyed to Hamilton and Magrath, “for better securing to the said John Magrath and James Hamilton, trustees for the said creditors, the parties of the third part, the payment of the said bond, according to the condition thereof.” Could Mr. Stoney have denied the fact, thus stated, above his own signature, that these trustees were.appointed by the creditors to take the bond and conveyance from him? Certainly not.
It is true the creditors might have denied it, and were not bound by the terms of the trust until they accepted, but the relation of trustee and cestui que trust was completely and conclusively established, under the hands and seals of both the grantor and the trustees, in their favor, and whenever they accepted they were bound by the terms.
Independently of all this, the ..evidence shews that Mr. Stoney *? was not acting for his own benefit, and apart from tfie creditors. The fact that a single creditor was engaged in the treaty which led to the execution of the securities, is sufficient, of itself, to shew that Mr. Stoney was not proceeding of his own head; and whether such creditor acted for himself alone, or for others also, can make no other difference than this, that if he acted for others he cannot exclude them from the benefits acquired. Now, the evidence shews that the terms of this arrangement were proposed to the Bank of Charleston; that it was entered into with their approbation after deliberate consideration ; that a settlement was made in reference to it, although, in some respects, inaccurate, (upon which point we concur with the Chancellor;) that interest has been paid under it; and can it be doubted, that the creditor thus acting has accepted, and is bound % The same remark applies to the Bank of Cheraw.
As respects Phelps, Dodge cfc Co., I have already expressed the opinion, that they might come in now, if they had not already accepted. They have done nothing inconsistent with the terms imposed on the creditors. Their bringing suit was no infringement of the terms, that they were to wait to a certain time for their money, and if it would otherwise have been so, it was done in ignorance of their rights, and should not prejudice them. As to the assignee of Levy, he must come in upon principles already announced, and we have determined, in another suit, that he comes in for the whole of his demand.
I am sorry that there still remain several points, the consideration of which must necessarily protract an opinion already too prolix.
It is said that the bond and deed are ineffectual at law. It is argued that no suit could be maintained on the former, by the gentleman who has succeeded General Hamilton in the Presidency of the Bank of Charleston, and who, as successor, is substituted for him as trustee, by virtue of a provision in the deed. The precise objection is, that suit could not be brought in the joint name of this substitute and Mr. Magrath, the other trustee. No doubt of this, but .the provision referred to contemplates merely a transmission of the trusts, and in no manner affects the legal obligation of the bond, which may still be enforced in the name of the obligees, or the survivor of them, or under our own Act, in the name of the assignee of both.
Then it was argued, that the deed is inoperative at law, for incompleteness; that it purports to be a deed tripartite, and al *259 though executed by Mr. Stoney and-the trustees, the first and second parties, it was not executed by the creditors, who were to be the third party.
The deed was delivered, being as completely executed, as between the grantor and grantees, as they could execute it. As between these parties, the conveyance was complete; and it must operate as a conveyance," unless the accession of the third party, by signing and sealing, was a prerequisite to its operating as such. I have already said that no such condition is required in terms upon the face of the paper. Still, the necessity for its execution by the creditors might be implied. This must depend upon what was exacted from them by the terms of the deed; as if, for instance, something were required of them essential to the completeness of the conveyance. But the only thing expected from these creditors, as appears from the instrument, was their assent, in a binding form, to certain indulgencies and abatements on their demands, a matter which, in no sense, concerned the validity of the.grant, but only aifected the terms of the trust, and restricted them in the enforcement of their interests under it. They were in no manner the owners of the property to be conveyed, nor necessary parties in its conveyance. Now if, as all the authorities shew, the assent of the creditors as effectually imposes its terms upon them as if they had sealed it, what is to prevent its operating upon the fact of the actual assent given, at least by the Bank of Charleston, at its execution?
Having thus before us a trust completely constituted, — so constituted as to create a responsibility on the part of the trustees to their cestui que trust, for its execution, which responsibility entitles the trustees, for their own indemnity, to enforce it against the author of it, and the trust having been partly executed, and consisting in instruments of legal validity, we feel no hesitation in declaring that the cestuis que trust are entitled to the benefits .of those instruments, according to their legal force and effect, and that to that extent they are conclusively available against Mr. Stoney, and his estate, in the hands of his executors.
His general creditors can raise no objection to this. To the validity and original operation of the instruments, as I have said, they can object only on the score of fraud; and there is no fraud here. The character of the transaction has been somewhat misapprehended in the argument. It does not purport to have been a general assignment or composition, but merely a security given to certain creditors, limited to certain portions of the debtor’s es *260 tate, upon terms advantageous to him, and no otherwise disadvantageous to his general creditors, than as all liens and special securities must necessarily be; and to regard such arrangements as obnoxious to the stigma of fraud must, as I think is satisfactorily argued in one of our own cases, (Niolon vs. Douglas, 2 Hill’s Ch. 443,) cut up all securities, and destroy that freedom which is essential to commerce.
But the general creditors raise another objection, not directly striking at the validity of the instruments, but the effect to be given them by this court, in the distribution of the funds before us.
It is said that the preferred creditors are here demanding an enforcement of the instruments, and this will be allowed only upon terms of equality. It must be remembered, however, that these creditors are here resisting an attempt either to set aside the provision made in their favor, or to reduce their rights under it to a scale below the legal rank of their securities. Property having been sold belonging to their trustee, by legal conveyance, and an estate being about to be distributed, upon which their trustee holds a bond, they have been called in to exhibit their claims upon the funds; and they come in not to invoke the active interposition of equity, or to ask that a different or more extensive operation should be given to the instruments under which they claim, than the law gives them, but to claim their benefit, according to their legal rank and operation. Being brought into court, they, in the person of their trustee; insist upon their legal rights, and those only, which are vested in him, and which, if they were not in court, he would be bound, in the faithful discharge of his duty, to demand and enforce.
Can there be any doubt, that in the distribution of the assets of a deceased debtor, a bond debt, whether held by a trustee or any other person, is to be paid, under our statute, before simple contracts?
Then as to the property covered by the deed; is there any doubt that the grantee is entitled to the avails of it? In what I have heretofore said, I have not thought it necessary to draw any distinction between the different species of property, — realty and personalty — embraced in the deed, nor to advert to the fact, that the deed was not intended as an absolute conveyance, but as a security. There is no doubt that the instrument vested the title of the personalty in the grantee. Then, as to the lands, some doubt has been intimated, whether the deed, substantially *261 a mortgage, comes exactly within the purview of the Act of 1791. This doubt, I think, is not well founded. But without deeming it necessary to decide that point, and assuming that that Act applies, so as to reserve the title to the grantor, and reduce the conveyance to a mere lien; still it was one enforceable at law. The grantee was under no necessity to come here to enforce it, but might, upon obtaining judgment upon his bond, have disposed of the fee under his judgment, it no other judgment intervened ; and if a judgment intervened, he might have disposed of the fee under his mortgage, by pursuing the directions of the statute in such case. Shall this court dispose of property thus liable ; and shall he who was entitled to these remedies, when he comes to ask that he shall not be prejudiced by the act of the court, be turned away with a declaration that there is a rule in the forum forbidding it to reinstate him in the legal rights of which it has deprived him ?
This court, in the distribution of funds, constantly recognizes liens. Professor Story, (1 Story’s Eq. 522, ch. 9, sec. 553,) after observing that, in the course of the administration of assets, courts of equity follow the same rules in regard to legal assets, which are adopted by courts of law, and give the same priority to the different classes of creditors which is enjoyed at law, says, “ in like manner, courts of equity recognize and enforce all antecedent liens, charges and claims, in rem, existing upon the property, according to their priorities; whether they are of a legal or equitable nature, and whether the assets are legal or equitable.”
It was faintly urged, that the whole of the funds in hand were to be administered as equitable assets. There are no equitable assets before us in this case, nor any attempt to bring into the fund for distribution, by the intervention of equity, any subject matter not already constituting part of the fund, by legal operation, without the aid of this court. If the assets were equitable, however, and not legal, we have just seen that the lien of the mortgage must be allowed.
As I have said, at the outset, so far as the mortgaged property may extend, it must be applied in extinguishment of the bond, and the demands secured by it. Then, if any portion of those demands remain unsatisfied, the bond, as a legal obligation, is a good demand, according to its rank, against the assets in the hands of the executors, for that balance. A law court — every court — must look to its form, in assigning it its rank as against *262 the assets; and being a bond, the statute points out the order in which it shall be paid. The Chancellor supposes that the demands secured-, and not .the bond by which they are secured, must be looked to, for the purpose of ascertaining the order of payment, after the security of the mortgage shall have been exhausted; and that as the bond does not extinguish the demands, to which it is collateral, these alone, as they form the real claim, so they must give rank and character to the claim, as against the assets. But upon this point we differ from the Chancellor. It is difficult to conceive why we should give efficacy to one of the securities, (the mortgage,) so far as it extends, to sustain the interests of the creditors' for whose benefit it was executed, and yet deny its proper legal rank and efficacy to the other security,- (the bond) when proposed as a further means of sustaining the same interests. If it is a security, it must be allowed to operate as one; and it cannot operate as a security unless it be allowed the rank of a specialty — which is its proper legal rank — against the assets. If it be not allowed this operation, it is no security at all; it is a nullity, and no bond.
Before we part from the claims of these creditors, it may be as well to say, that we concur with the Chancellor in so much of his decree as strikes from the demands of the Bank of Charleston, and the Bank of Cheraw, the excess of interest, and the exchange, costs of protest and postage, charged in their settlement with Mr. Stoney. If these had been paid by Mr. Stoney, it is not perceived that either he or his creditors could have complained of it, although varying from the terms of the securities given to the prefeiTed creditors. But they were merely included in the new notes given upon the settlement, and which remain yet to be paid; and, therefore, the demands of these creditors must be reduced, so as to conform to the terms of the securities upon which they insist.
There is another point proper to be noticed here. We approve the Chancellor’s decision, that those among the preferred creditors who received partial payments from Mr. Stoney himself, are not bound to bring them into account, as a condition of receiving further satisfaction of their demands, either from the special fund arising from the mortgaged property, or from the general assets; nor are they, on account of such partial payments, to be postponed until the others are put upon an equality; and nothing need be added to the Chancellor’s reason *263 ing oil these subjects. But as to payments made them, either out of the mortgaged fund, or the general assets, since the death of Mr. Stoney, the rule must be different. The preferred creditors are entitled, pro rata, to the benefits of their common secu-rites; and, if it becomes necessary, the accounts must be so cast as to give them these benefits ; and, (to dispose of the whole subject,) so, also, as to do no injustice to the general simple contract creditors, who are entitled to the benefit of the general assets, after the demands of the preferred creditors are satisfied.
We concur in the Chancellor’s decision, in relation to Mrs. Stoney’s dower, and for the satisfactory reason he has given. Whether the amount to be allowed her for dower should be set off against any balance which may be due by her as executrix, upon the account of the administration of her husband’s estate, need not be determined until a balance of that character shall be ascertained against her; and as the accounts will go back to the master, the question is reserved until the necessity for its decision shall arise. The point may be made on the reference.
We also concur, generally, in the decision of the Chancellor in relation to the claim of Mrs. Stoney and her children, founded upon the receipt given for Ashby’s bond. The view he has taken of the nature of Mrs. Stoney’s interest in this trust, does not appear to us, however, to be quite accurate ; and the inaccuracy may affect the claim, so far as she is concerned. Where a conveyance is made to the husband of a married woman, for her sole and separate use, the husband is constituted her trustee, and for her sole and separate use — confining the trust to the nature of the interest expressly intended to be given her. Where, however, the conveyance to the husband is simply for the use of, or in trust for, the wife, and not for her sole use, the husband is trustee for the wife, according to the quantity of interest given her, and no more. It is an interest which survives to the wife, upon the death of the husband; but during the coverture, the husband is entitled to the usufruct, in her right. This distinction can in no otherwise affect the decision of the Chancellor, however, than as respects the interest of so much of the trust fund, during Mr. Stoney’s life, as accrued upon Mrs. Stoney's share. In casting the accounts, this must be taken notice of, if insisted on.
Again, we concur with the Chancellor with respect to the expenses of the negroes between their sale and delivery to the purchasers; and also with respect to the demand brought in for *264 shoes ; with this qualification, that it would not be sufficient to establish the insolvency of the executors. The claimants must, also, shew that they are either in advance with the estate, or at least not in arrears with it; in other words, that the accounts between the executors and the estate stand in such a position, that the executors could, if they had paid the demand, rightfully claim to be reimbursed out of the trust fund.
With regard to the grounds of appeal taken by the executors, they are all substantially disposed of, so far as they have been explained to this court, except that one which asks that the surviving executor of John Williamson be made a party. He is a party, in the person of the defendant, Magrath ; and when the accounts go back to the master, the executors will have an opportunity to raise an account against him, or to present such grounds for the modification of the accounts in' the matters complained of, and not already adjudicated, as they may deem for their interests.
It is ordered, that the decree appealed from be modified according to the foregoing opinion; that the cause be remanded to the Circuit Court, and the accounts recommitted to the master.
Harper and Dunkin, CC. concurred.